UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HIAWATHA CUFFEE, JR.,

                                    Plaintiff,

                    -against-

THE CITY OF NEW YORK; OFFICER
SQUILLARO (SHIELD # 18063); OFFICER
GONZALEZ (SHIELD # 17148),

                                    Defendants.

15cv8916 (PGG) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE PAUL G. GARDEPHE, U.S.D.J.:**

In this action brought under 42 U.S.C. § 1983, *pro se* plaintiff Hiawatha Cuffee, Jr.

("Plaintiff") alleges that his constitutional rights were violated by the actions of two New York

City correction officers, defendant Officers Squillaro and Gonzalez (together, the "Correction

Officer Defendants"), in connection with their conduct during and in the immediate aftermath of

a motor vehicle collision that occurred while Plaintiff was being transported on a New York City

Department of Correction ("DOC") bus.  Plaintiff also names the City of New York (the "City")

as a defendant, alleging that the circumstances give rise to municipal liability.

Currently before this Court for a report and recommendation is a motion brought by the

Correction Officer Defendants and the City (collectively, "Defendants") to dismiss the

Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. 16.)  For the

reasons set forth below, I recommend that the motion be granted in part and denied in part.

## BACKGROUND

### A.    Factual Background

For purposes of this motion to dismiss, the factual allegations in Plaintiff's Complaint

must be taken as true.  (*See* Discussion, *infra*, at Section I(A).)  Furthermore, as Plaintiff is

proceeding *pro se*, the allegations of his Complaint must be liberally construed, and any additional facts that he has alleged in opposition to Defendants' motion to dismiss may be considered by the Court as supplementing those pleaded in the Complaint.  (*See id.*)  Accordingly, the facts summarized herein are derived from this Court's liberal construction of Plaintiff' Complaint, dated October 17, 2016 ("Compl.") (Dkt. 2), as well as from his various opposition submissions (*see* Letter to the Court from Plaintiff (containing Plaintiff's "Rebuttal" to Defendants' pre-motion letter), dated May 21, 2016 ("Pl. 5/21/16 Ltr.") (Dkt. 14); Letter to the Court from Plaintiff (containing an "Addendum" to his prior letter), dated May 24, 2016 ("Pl. 5/24/16 Ltr.") (Dkt. 15); Plaintiff's opposition to Defendants' motion to dismiss (titled "Notice of Motion"), dated Sept. 19, 2016 ("Pl. Opp.") (Dkt. 23); and Plaintiff's supplemental opposition to Defendants' motion (titled "Motion in Opposition"), dated Sept. 27, 2016 ("Pl. Supp. Opp.") (Dkt. 26)).

Based on Plaintiff's submissions, the DOC transported him on July 31, 2015, by bus, from Rikers Island ("Rikers"), where he was being detained, to Bellevue Hospital Center,[1] where he had a prostate examination and biopsy.  (Compl., at 9.[2])  During the return trip to Rikers, Plaintiff was handcuffed, shackled, and locked inside a three-and-a-half-foot-wide steel cage situated directly behind the driver's seat of the bus.  (*Id.*)  He did not have a seatbelt.  (*Id.*, at 12.)

---

[1] This Court takes judicial notice of the fact that Bellevue Hospital Center is now known as New York Health + Hospitals/Bellevue ("Bellevue"), and that male detainees at Rikers are taken to Bellevue when they are in need of medical care that cannot be provided at Rikers.  *See* http://www.nyc.gov/html/doc/html/about/facilities-overview.shtml (last accessed Mar. 1, 2017).

[2] Plaintiff utilized a form civil-rights complaint in this action, filing out that form as indicated, in numbered paragraphs.  In paragraphs II(A-D) of the form, however, which called for a statement of his claim(s), Plaintiff wrote "see attached," and he then attached to the form a four-page, handwritten statement describing his factual allegations and the claims he is asserting. To the extent this Court cites to that attached statement, this Court will cite to the page numbers of the statement, as they are reflected on the Court's electronic case filing ("ECF") system.

On that return trip, defendant Officer Gonzalez was driving the bus, and defendant Officer Squillaro was also on board.  (*Id*., at 9.)  Plaintiff alleges that, soon after leaving Bellevue, he observed Officer Gonzalez "pull out into traffic . . . at an unusually high rate of speed."  (*Id.*)  The bus then collided with another vehicle, causing Plaintiff to be "thrown forward" into the steel cage.  (*Id.*; Pl. Opp., at 2.)  The force of the impact allegedly caused injury to Plaintiff's knees, back, and neck, resulting in severe pain, and Plaintiff "immediately began screaming to Officer Gonzalez" for medical attention.  (Compl., at 9; Pl. 5/21/16 Ltr., at 3.)  Plaintiff states that he was also bleeding from his rectum as a result of the biopsy that he had received at Bellevue, and that, after the collision, he told the Correction Officer Defendants "over and over" that he was bleeding.  (Pl. 5/21/16 Ltr., at 3; *see also* Compl., at 9.)  Plaintiff also maintains that the Correction Officer Defendants knew that he had gone to Bellevue to obtain the biopsy because they had escorted him to that operation.  (Pl. 5/21/16 Ltr., at 3.)

After the collision, the Correction Officer Defendants exited the bus, while, according to Plaintiff, he and the other detainees screamed for help, "complaining about their various injuries and pleading for medical assistance."  (Compl., at 9.)  The detainees "were told to hold on," as the Correction Officer Defendants got off of the bus, with their hands on their weapons, in order to confront the driver of the other vehicle involved in the accident.  (*Id.*)  Plaintiff did not receive medical attention on the scene.  (*Id.*, at 10.)  Instead, while correction officials completed their investigation of the collision, he and the other detainees sat on the bus for an extended period of time, claimed by Plaintiff, in the Complaint, to be about an hour and a half (*id.*, at 9), but then described in one of his subsequent submissions as three-and-one-half hours, plus another half hour "to be 'shackled in chain[s]' and loaded to another bus" (Pl. 5/21/16 Ltr., at 1).  Eventually, Plaintiff was transported back to Rikers, where he received an X-ray and medical personnel gave

him an ice pack, some pain medication, and a cane for his injuries.  (Pl. 5/21/16 Ltr., at 1; *see also* Compl. ¶ 4(C); *id*. at 10.)

Plaintiff asserts that this incident put his life in danger.  (*Id.*)  He alleges that DOC buses are not equipped with seatbelts, airbags, or other means to protect passengers from injury in the event of an accident, and that it is dangerous for detainees to be "shackled and handcuffed" on such a bus because they "fly out of their seats."  (*Id*., at 12.)  Plaintiff further asserts that Officer Gonzalez caused the collision by driving recklessly (*see id*., at 11) and that, after the collision, both Correction Officer Defendants knew that Plaintiff needed urgent medical care, but maliciously disregarded the injuries he had sustained.  (Pl. 5/21/16 Ltr., at 1, 3.)  He contends that these officers acted with "malicious intent" and "intent to cause duress," when they failed to obtain medical assistance for him in the immediate aftermath of the collision (Pl. Opp., at 2), and that their failure to return to Bellevue or to call emergency medical services to respond to the scene "caused [him] further harm" (Pl. 5/21/16 Ltr., at 3).

Plaintiff complains that, as a result of the incident, he is now in constant and extreme pain and "walking with a cain [*sic*, cane] and stomach belt."  (Compl., at 10-12; *see id*., at 11 (stating that, although he was, "at the age of 60 year[s,] in walking and running condition" and had "come into jail healthy," he would "leave by the will of God, twisted").)  He also maintains that the injuries that he sustained to his neck, lower back, knees, and pelvic area caused a loss of mobility that will prevent him from performing his job as a "certified plant maintenance electrician."  (*Id*., at 12.)

### B.       Procedural Background

#### 1.       Plaintiff's Complaint

Plaintiff commenced this action in this Court on October 17, 2015, by filing his *pro se*
Complaint.[3]  In his Complaint, Plaintiff purports to assert three separate claims for relief under
Section 1983:  First, he claims that "being placed in a dangerous situation and position" violated
his "rights under the [Fourth] Amendment to be secure in his person and not be denied life and
liberty."  (Compl., at 11.)  Second, he claims that Correction Officer Defendants, by their
reckless conduct, subjected him to "cruel and unusual punishment," in violation of the Eighth
Amendment (*id.*) – a claim that, consistent with Plaintiff's opposition papers (*see* Pl. Opp., at 2)
and this Court's assumption that Plaintiff was likely a pretrial detainee at the time of the incident,
this Court construes as alleging deliberate indifference to Plaintiff's safety and to his serious
medical needs, in violation of the Due Process Clause of the 14th Amendment.[4]  Third, again
invoking the language of the Eighth Amendment, Plaintiff claims that the City should be held
liable for his injuries, apparently because of its failure to equip DOC buses with safety features
(Compl., at 12); this Court construes this as a claim for municipal liability under *Monell v. Dep't
of Social Servs.*, 436 U.S. 658 (1978).  Plaintiff seeks compensatory damages and an order
requiring the DOC to re-train its transportation officers in emergency procedures.  (Compl., ¶ V;
*id.*, at 11-12.)

---

[3] Although the Court's Docket reflects a filing date of November 11, 2015, a *pro se*
prisoner's papers are deemed filed when they are handed over to prison officials for forwarding
to the Court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  Here, given that Plaintiff has
declared, under penalty of perjury, that he delivered his Complaint to prison authorities on
October 17, 2015, to be mailed to this Court (*see* Compl., at 8), the Court will deem the
Complaint to have been filed on that date.

[4] If Plaintiff was actually a convicted inmate, and was serving a prison sentence at the
time of the incident, then a deliberate-indifference claim would in fact be appropriately pleaded
under the Eighth Amendment.  (*See* Discussion, *infra*, at Section II(B)(1).)

5

2.      **Defendants' Motion To Dismiss**

On May 16, 2016, Defendants filed a letter request for leave to move to dismiss the

Complaint under Rule 12(b)(6).  (Letter to the Court from Evania Englert, Esq., dated May 16,

2016 (Dkt. 12).)  Defendants' letter included arguments and points of law, to which Plaintiff

responded, by letter dated May 21, 2016.  (Pl. 5/21/16 Ltr.)  Three days later, Plaintiff submitted

an addendum to his May 21 letter, informing this Court that a separate claim that he had lodged

against the City (apparently arising out of the same incident) had been settled, and arguing that

the settlement by the New York City Comptroller's Office "validat[ed] points of contention[]" on

Plaintiff's federal Section 1983 claims.  (Pl. 5/24/16 Ltr.)

On June 30, 2016, Defendants proceeded to file their motion to dismiss the Complaint

(Dkt. 16), together with a copy of a Local Civil Rule 12.1 Notice[5] to Plaintiff (Dkt. 17), an

attorney Declaration (Dkt. 18 (attaching a copy of the Complaint)), and a supporting

memorandum of law (Memorandum of Law in Support of Defendants' Motion To Dismiss the

Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), dated June 30, 2016 ("Def. Mem.") (Dkt. 19)).

Plaintiff responded to the motion with opposition papers dated September 19, 2016 (Pl. Opp.)

and September 27, 2016 (Pl. Supp. Opp.).

In his September 19 opposition, Plaintiff referred the Court to *Smith v. City of New York*,

No. 15cv7910 (GHW) ("*Smith*"), a Section 1983 case similar to his, filed in this Court by

another Rikers detainee (or inmate) who was apparently transported on the same bus from

Bellevue, at the same time as Plaintiff, and who was also allegedly injured in the collision.

---

[5] Local Rule 12.1 requires that "a represented party moving to dismiss . . . against a party
proceeding *pro se*, who refers in support of the motion to matters outside the pleadings as
described in Fed. R. Civ. P. 12(b) or 12(c), shall serve and file" a notice that warns the *pro se*
party that the Court may convert the motion to a motion for summary judgment.  Despite service
of such a Notice in this case, Defendants do not appear to refer to any matters outside the
pleadings in their Rule 12(b)(6) motion.

(Pl. Opp., at 1-2.)  Plaintiff asked the Court to consider the "amended complaint"[6] in *Smith* as a "witness" affidavit in this action.  (*See id.*)

### DISCUSSION

I.    **RULE 12(b)(6)**

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure where it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff's claim, as pleaded, is sufficient to afford him or her the opportunity to proceed on the evidence.  *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (citation omitted).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  *Achtman v. Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  To survive a motion to dismiss, a complaint "must contain

---

[6] The plaintiff in *Smith* filed a First and a Second Amended Complaint, both captioned "Amended Complaint" and both dated prior to September 19, 2016.  (*See Smith*, No. 15cv7910, Dkts. 14, 39.)  As Plaintiff did not specify which of these two pleadings he was seeking to place before this Court, this Court liberally construes his submissions to refer to the Second Amended Complaint in *Smith*, which contains more detailed allegations than the earlier pleading.  (*Id.* at Dkt. 39.)  This Court notes that, on December 28, 2016, Judge Woods granted a motion to dismiss Smith's claims, with leave to amend.  *See Smith v. City of New York*, No. 15cv7910 (GHW), 2016 WL 7471334, at *6 (S.D.N.Y. Dec. 28, 2016).

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged."  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 556
U.S. at 666), *cert. denied*, 131 S. Ct. 901 (2011).

Additionally, "[i]t is well established that the submissions of a *pro se* litigant must be
construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'"
*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases;
emphasis in original); *see also Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (noting that a *pro se*
party's pleadings must be liberally construed in his favor and are held to a less stringent standard
than the pleadings drafted by lawyers); *Lerman v. Bd. of Elections in the City of New York*,
232 F.3d 135, 139-40 (2d Cir. 2000) ("Since most *pro se* plaintiffs lack familiarity with the
formalities of pleading requirements, [a court] must construe *pro se* complaints liberally,
applying a more flexible standard to evaluate their sufficiency.").  This is especially true in the
context of civil rights complaints.  *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001);
*see also Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (noting that a court must be "mindful
of the care exercised in this Circuit to avoid hastily dismissing complaints of civil rights
violations").

On a motion to dismiss a complaint, a court is generally constrained to look only to the
pleadings.  *See* Fed. R. Civ. P. 12(b); *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 492 (S.D.N.Y.
2013).  Nonetheless, the mandate that a *pro se* plaintiff's complaint be construed liberally makes
it appropriate for the court to consider the factual allegations in a *pro se* plaintiff's opposition

materials to supplement the allegations in the complaint.  *See Johnson v. Wright*, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002); *see also Sommersett v. City of New York*, No. 09cv5916 (LTS) (KNF), 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a *pro se* plaintiff has submitted other papers to the [c]ourt, such as legal memoranda, the [c]ourt may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations.").  A court may also consider certain additional materials, including documents attached to the complaint as exhibits or incorporated therein by reference, matters of which judicial notice may be taken, and documents that are "integral" to the complaint.  *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016); *see also, e.g.*, *Samuels v. Fischer*, 168 F. Supp. 3d 625, 645 n.11 (S.D.N.Y. 2016) (finding that, in resolving motion to dismiss, it was "appropriate to consider allegations contained in [p]laintiff's [o]pposition"); *Goldson v. Kral, Clerkin, Redmond, Ryan, Perry & Van Etten, LLP*, No. 13cv2737 (GBD) (FM), 2014 WL 4061157, at *3 (S.D.N.Y. July 11, 2014) (amended report and recommendation) ("When a plaintiff is proceeding *pro se*, the Court also may rely on any opposition papers in assessing the legal sufficiency of the plaintiff's claims"), *adopted*, 2014 WL 3974584 (Aug. 13, 2014).

Although courts have not followed this approach in every case, *see, e.g.*, *Brunson v. Duffy*, No. 12cv9465 (KBF), 2015 U.S. Dist. LEXIS 29015, at *4 (S.D.N.Y. Mar. 6, 2015) (citing *pro se* cases where courts declined to consider new facts included in opposition), it is certainly true that the papers submitted by a *pro se* plaintiff in opposition to a Rule 12(b)(6) motion may offer clarification or context that can aid the Court in understanding the plaintiff's pleading and in affording it a liberal construction, *see id.*, at n.4 (noting that "a district court needs to assess each case on an individual basis").  Applying the pleading rules permissively is particularly appropriate when, as here, a *pro se* plaintiff alleges civil rights violations.  *See Sealed Plaintiff v.*

*Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  Moreover, where the addition of allegations contained in opposition papers would be sufficient to enable an otherwise deficient *pro se* pleading to survive a Rule 12(b)(6) motion, a court may deem the pleading amended to include the additional allegations.  *Johnson*, 234 F. Supp. 2d at 356.

In addition, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco*, 222 F.3d at 112 (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  Where an amendment would be futile, however, leave to amend is not required.  *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *see also Cuoco*, 222 F.3d at 112 ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.").

## II.   PLAINTIFF'S CLAIMS

To state a claim under Section 1983, a plaintiff must allege both that:  (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor."  *West v. Atkins*, 487 U.S. 42, 48-49 (1988).  For any action under Section 1983, a plaintiff must also allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation.  *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  In general, a state actor's negligence does not create a cause of action under Section 1983.  *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012); *Medeiros v. O'Connell*, 150 F.3d 164, 170 (2d Cir. 1998).

The three claims that Plaintiff asserts in this case are addressed here, in turn.

### A.      Fourth Amendment Claim

As noted above, in his first claim, Plaintiff refers to alleged "violations of his . . . federal constitutional civil rights under the 4th Amendment to be secure in his person and not be denied life and liberty."  (Compl., at 11.)  The Fourth Amendment protects against unlawful searches and seizures, including unlawful arrests, but Plaintiff makes no allegations that he was either arrested or subjected to any unlawful search as a result of the motor-vehicle collision that is the subject of his Complaint.  In the absence of such allegations, the Fourth Amendment is simply "inapplicable" to this case.  *Smith*, 2016 WL 7471334, at *5 (dismissing purported Fourth Amendment claim on facts substantially similar to those alleged here).  Further, as Plaintiff has not shown that he could plausibly state a Fourth Amendment claim in this action, I recommend that his first claim be dismissed with prejudice.

### B.      Deliberate-Indifference Claims

Plaintiff's second claim, liberally construed, can be read to plead that the Correction Officer Defendants violated his rights under the 14th Amendment (assuming Plaintiff was a pretrial detainee at the time) or the Eighth Amendment (if he was a convicted inmate), by their deliberate indifference to his safety or serious medical needs.  (*See* Compl., at 11 (referring to "cruel and unusual punishment").)

#### 1.      Applicable Legal Standards

The Constitution prohibits correction officials from acting with deliberate indifference to the "reasonable safety," *Farmer v. Brennan*, 511 U.S. 825, 844 (1994), and "serious medical needs," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), of prisoners.  Where the plaintiff is incarcerated pursuant to a conviction, such a claim is grounded in the Eighth Amendment's

prohibition of "cruel and unusual punishment," *see id.*, at 102-04, but, "[i]n the case of a person

being held prior to trial," this proscription "'does not apply,' because 'as a pre-trial detainee [the

plaintiff is] not being 'punished,'" *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (quoting

*Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)).  Rather, where the plaintiff is in custody as

a pretrial detainee, a deliberate indifference claim is grounded in the Due Process Clause of

either the Fifth Amendment (for a detainee in federal custody), or the 14th Amendment (for a

detainee in state custody).  *See id.*

    Deliberate indifference is evaluated under a two-pronged test, which is comprised of both

objective and subjective components.  *See Jabbar*, 683 F.3d at 57; *Hill v. Curcione*, 657 F.3d 116,

122 (2d Cir. 2011); *see also Darnell v. Pineiro*, No. 15-2870, 2017 WL 676521, at *14 (2d Cir.

Feb. 21, 2017) (characterizing the "subjective" component as a "*mens rea*" or "mental element

prong").  To state a claim for the deprivation of a constitutional right based on a theory of

deliberate indifference, a plaintiff must allege "(1) that the deprivation alleged [was] 'objectively

sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's

necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind.'"

*Trammel v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (quoting *Farmer*, 511 U.S. at 834).

    As to the objective component, which is the same under both the Eighth and 14th

Amendments, *Darnell*, 2017 WL 676521, at *9, "there is no 'static test' to determine whether a

deprivation is sufficiently serious; '[t]he conditions themselves must be evaluated in light of

contemporary standards of decency,'" *Jabbar*, 683 F.3d at 57 (quoting *Blissett v. Coughlin*,

66 F.3d 531, 537 (2d Cir. 1995)).  In general, however, the standard contemplates deprivations of

"'basic human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable safety.'"

*Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

The subjective component is analyzed differently depending on whether the claim is brought under the Eighth Amendment or 14th Amendment, because, although the Eighth Amendment prohibits cruel and unusual punishments of prisoners incarcerated pursuant to convictions, pretrial detainees, who would be protected under the 14th Amendment, "may not be punished at all." *Darnell*, 2017 WL 676521, at *14. For claims arising under the Eighth Amendment, a plaintiff must show that the defendants knew of and disregarded an excessive risk to his or her health or safety by failing to take reasonable measures to avoid the harm. *Caiozzo*, 581 F.3d at 69. The plaintiff must allege that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm existed," and also that they drew the inference. *Farmer*, 511 U.S. at 837. A defendant's knowledge of an excessive risk to the prisoner's health can be established through a showing that "the risk was obvious or otherwise must have been known to [the] defendant." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003).

For claims arising under the 14th Amendment, on the other hand, the Second Circuit has determined that, in light of *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), "the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively." *Darnell*, 2017 WL 676521, at *14. Under this standard, a pretrial detainee need only show that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* In other words, "the Due Process Clause can be violated when an

official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." *Id.*

As noted, it is unclear from Plaintiff's submissions whether, at the time of the alleged events, he was in custody at Rikers as a pretrial detainee, or had been convicted of a crime and was serving a sentence of incarceration. Accordingly, this Court analyzes Plaintiff's medical care claim under the deliberate-indifference standard of both the Eighth and 14th Amendments.

## 2. <u>Deliberate Indifference To Safety</u>

Plaintiff may be attempting to plead that the circumstances that led to his injuries manifest a deliberate disregard, by the Correction Officer Defendants, for an excessive risk to his safety.

Under the Eighth and 14th Amendments, a state actor "must not deprive prisoners of their 'basic human needs,'" including "'reasonable safety,'" and must not "expose prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health.'" *Phelps*, 308 F.3d at 185 (quoting *Helling*, 509 U.S. at 35). The Second Circuit has held that the absence of seatbelts on a correctional facility vehicle, "when based on legitimate penological concerns rather than an intent to punish, is reasonable" and does not, in itself, constitute a denial of "reasonable safety" in violation of the Eighth or 14th Amendments. *Jabbar*, 683 F.3d at 58 (affirming the dismissal of a deliberate-indifference claim grounded in the failure of prison officials to provide seatbelts to prison inmates where the plaintiff neither alleged that "there was an intent to punish or other improper motivation for the lack of seatbelts" nor that the defendants "knew of any excessive risk to inmate safety"). Moreover, motor-vehicle accidents, by themselves, do not implicate the Constitution's protections, and "allegations of a public official driving too fast for the road conditions are grounded in negligence" and are therefore not

14

actionable under Section 1983. *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 436 (S.D.N.Y. 2004); *see also Uhl v. Wendy*, No. 15cv6923 (VB), 2016 WL 7190584, at *4 (S.D.N.Y. Dec. 9, 2016).

An in-custody plaintiff injured during transport may, however, state a deliberate-indifference claim if he or she alleges facts in addition to the absence of seatbelts and reckless driving, that, taken as a whole, suggest that the plaintiff was exposed to conditions posing an unreasonable risk of serious harm, and that the defendants were aware of those conditions. *See Torres v. Amato*, 22 F. Supp. 3d 166, 176 (N.D.N.Y. 2014) (distinguishing *Jabbar* and denying summary judgment on a deliberate-indifference claim where the plaintiff alleged, and put forth evidence demonstrating that, not only had the defendants failed to provide the plaintiff with a seatbelt in a prisoner van, but they also failed to latch the van's door properly, operated the van recklessly and at unsafe speeds with knowledge that the plaintiff was not restrained, and were aware of an earlier incident in which another inmate was injured while not wearing a seatbelt); *cf. Lynch v. Jane Doe Corr. Officer Blue*, No. 14cv6919 (VB), 2016 WL 831969, at *4 (S.D.N.Y. Feb. 29, 2016) (granting a motion to dismiss a deliberate-indifference claim grounded in a failure to provide seatbelts, but noting that the allegations presented a "closer call than *Jabbar*," where the plaintiff alleged that he was not provided a seatbelt in a prisoner van and a defendant officer ordered him to change seats while the van was moving).

Here, in addition to alleging that he was not provided a seatbelt on the DOC bus and that Officer Gonzalez drove recklessly by "pull[ing] out into traffic . . . at an unusually high rate of speed," Plaintiff has alleged that he was "handcuffed and shackled at the waist[,] and confined in a steel, locked cage approximately [three-and-a-half] feet wide," while the bus was moving. (Compl., at 9.) He has also alleged that "[b]eing shackled and handcuffed" on these types of

buses is "dangerous because detainees fly out of their seats." (*Id.*, at 12.)  Moreover, Plaintiff has alleged that the Correction Officer Defendants were aware of the conditions of his transport, as he was seated directly behind Officer Gonzalez and that Officer Squillaro was also present on the bus.  (*See id.*, at 9.)

This Court finds it plausible that the act of a correction officer in driving recklessly, at excessive speed, with knowledge that a detainee is being transported in the vehicle – not just without a seat belt, but within a small steel cage, with hands in handcuffs that are linked at the waist and thus cannot be used to brace or otherwise protect himself – could rise to the level of deliberate indifference to an excessive risk to that detainee's safety.  These facts, if proven, could reasonably establish more than negligence, and thus bring this case outside the ruling of *Jabbar*. Accordingly, this Court finds that Plaintiff has stated a claim under the Eighth and 14th Amendments that Officer Gonzalez, as the driver of the bus, and acting "with deliberate indifference, exposed [Plaintiff] to . . . an unreasonable risk of serious damage to his future health."  *Helling*, 509 U.S. at 35; *see also Torres*, 22 F. Supp. 3d at 176.  In particular, Officer Gonzalez's alleged act of driving recklessly, while Plaintiff was confined in a cage without any reasonable means to protect himself from impact, would satisfy the objective prong of the deliberate-indifference test.  Moreover, given that Officer Gonzalez was the driver of the bus and that Plaintiff was seated right behind him, it is reasonable to infer that Officer Gonzalez was either actually aware of the excessive risk to Plaintiff's safety or that the risk was obvious, thereby satisfying the subjective prong of the test, under either the Eighth or 14th Amendments. *See Brock*, 315 F.3d at 164; *Darnell*, 2017 WL 676521, at *14.

Based on Plaintiff's pleading and other submissions, however, it cannot similarly be concluded that Plaintiff has stated a viable claim against Officer Squillaro for deliberate

indifference to Plaintiff's safety.  Plaintiff makes no allegation that this defendant personally

acted in any way that contributed to the unsafe conditions in which Plaintiff was placed or to the

collision itself, and thus any claim grounded in his alleged disregard for Plaintiff's safety should

be dismissed.  I recommend, however, that Plaintiff be permitted to replead his claim against

Officer Squillaro to explain this officer's involvement, if any, in Officer Gonzalez's allegedly

reckless driving and/or in Plaintiff's handcuffing, shackling, and caging on the bus.[7]

### 3.   Deliberate Indifference To Serious Medical Needs

Plaintiff also appears to be alleging that, by acting to delay his access to medical care

after the collision, the Correction Officer Defendants deliberately disregarded his serious medical

needs.

In the situation where a plaintiff receives medical treatment, but the treatment is delayed,

"it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the

prisoner's *underlying medical condition* alone" to determine whether the plaintiff has stated a

claim for deliberate indifference to his medical needs.  *Smith v. Carpenter*, 316 F.3d 178, 185

(2d Cir. 2003) (emphasis in original); *see also Smith*, 2016 WL 7471334, at *4.  "[A] plaintiff

may show delayed medical care warrants constitutional protection by alleging the delay

worsened his condition or increased the risk of future injury."  *Snyder v. Alam*, No. 15cv4033

(VB), 2016 WL 2642226, at *3 (S.D.N.Y. May 6, 2016) (finding that objective prong was met on

motion to dismiss where plaintiff alleged that delay in hospitalization and surgery caused his foot

and leg to become permanently swollen, and that he suffered "unnecessary pain" when he had to

---

[7] While, based on an evidentiary record, Defendants may be able to demonstrate a
legitimate penological interest in keeping Plaintiff not seat-belted, handcuffed, shackled at the
waist, and confined to a steel cage during transport, and thereby challenge whether the risk to
Plaintiff's safety caused by the combination of these measures was "excessive," the Court must
only focus, at this stage, on the adequacy of Plaintiff's pleading.

walk on broken bones for five days); *Bell v. Jendell*, 980 F. Supp. 2d 555, 560 (S.D.N.Y. 2013) (finding that objective prong was met on motion to dismiss where plaintiff alleged five-day delay in obtaining acid reflux prescription); *Lloyd v. Lee*, 570 F. Supp. 2d 556, 568 (S.D.N.Y. 2008) (finding that objective prong was met on motion to dismiss where plaintiff alleged that 16-month delay in receiving MRI contributed to his pain, discomfort, and loss of mobility, delayed his shoulder surgery, and increased the time required for his injuries to heal).

   Short-term delays in medical care generally fall short of the level of "seriousness" that the deliberate indifference standard requires.  *See DeMeo v. Koenigsmann*, No. 11cv7099 (HBP), 2015 WL 1283660, at *11 (S.D.N.Y. Mar. 20, 2015) (stating that, "[a]lthough a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years," although also noting that "[t]hese categories are not exclusive" (internal quotation marks and citations omitted)).  Nonetheless, if the pain that a plaintiff is made to endure during a delay in care is "evidently *so* extreme that leaving the plaintiff in such a state, even for a short time, present[s] a denial of the 'minimal civilized measure of life's necessities,'" then even a relatively short delay could be "sufficiently serious."  *Quinones v. City of New York*, No. 16cv985 (GBD) (DF), Dkt. 34, at 17 n.10 (S.D.N.Y. Jan. 6, 2017) (quoting *Farmer*, 511 U.S. at 834), *report and recommendation adopted*, 2017 WL 775851 (Feb. 28, 2017) (adopting view that a deliberate, one-day delay in surgery could be sufficiently serious, where plaintiff was allegedly experiencing "excruciating pain, bleeding, and urination from the stent remaining in his urethra" (*id.*, at *2)).

Courts have found that a plaintiff's allegations fail to meet the objective prong where the alleged "delay in providing medical attention is neither the underlying cause of a plaintiff's condition nor contributed to a worsening in the condition . . . ." *Smith*, 2016 WL 7471334, at *4 (finding that objective prong not met on motion to dismiss where plaintiff failed to allege that almost four-hour delay in medical care after prison bus accident either caused or exacerbated his medical condition); *see also Mitchell v. N.Y. City Dep't of Corr.*, No. 10cv0292 (RJH), 2011 WL 503087, at *4 (S.D.N.Y. Feb. 14, 2011) (finding that objective prong not met on motion to dismiss where plaintiff alleged only additional pain associated with two-to-three-hour delay in provision of pain medication); *Frith v. City of N.Y.*, No. 15cv5688 (NRB), 2016 WL 4705155, at *2 (S.D.N.Y. Aug. 25, 2016) (finding objective prong not met on motion to dismiss where plaintiff alleged a one-day delay in treatment of an infection, but not "that the delay itself caused or exacerbated the infection, caused him extreme pain, or caused any permanent harm").

Here, Defendants argue that Plaintiff's claim for an unconstitutional denial of medical care should be dismissed because Plaintiff has failed to satisfy both the objective and subjective prongs of the deliberate-indifference test.  (Def. Mem., at 11-12.)  As to the objective prong, Defendants argue that Plaintiff has failed to allege that his injuries were "sufficiently serious." (*Id.*)  On that point, Defendants contend that Plaintiff's allegation that "he was 'thrown forward,' which resulted in an injury to his knee, lower back, and neck" does not amount to "facts which would allow a Court to determine whether 'a reasonable doctor or patient would perceive the medical need in question as important.'"  (*Id.*, at 12 (citing *Brock*, 315 F.3d at 162).)

While, under the objective prong, it is appropriate to consider whether Plaintiff has alleged a sufficiently serious condition, such a consideration is not the sole focus in cases where the gravamen of the complaint is a delay, rather than a denial of, medical care.  *See Smith*,

316 F.3d at 185; *Smith*, 2016 WL 7471334, at *4.  Given allegations of a delay in medical care, the primary inquiry is whether the plaintiff has plausibly alleged that the delay caused or exacerbated his injuries.  *Smith*, 316 F.3d at 185; *Smith*, 2016 WL 7471334, at *4.  The actual medical consequences that result from the alleged delay, however, are "highly relevant" as well. *Smith*, 2016 WL 7471334, at *4; *see also Smith*, 316 F.3d at 188 n.14 (suggesting that the "seriousness determination" in medical deliberate-indifference cases "will often be ill-suited for resolution at the pleading stage" without "a fully developed medical record").

Defendants move for dismissal under Rule 12(b)(6) relying solely on the facts presented in Plaintiff's Complaint (Def. Mem., at 7), which does not contain an allegation that the delay in receiving medical treatment caused or exacerbated Plaintiff's injuries.  On the basis of the Complaint alone, Plaintiff's deliberate-indifference claim would thus fail, as a similar claim did in *Smith*. *Smith*, 2016 WL 7471334 at *4-5 (noting that complaint "contain[ed] no allegations the delay caused or exacerbated [the plaintiff's] injury").  This case is somewhat different from *Smith*, though, as, in his opposition papers, Plaintiff has not only contended that the Correction Officer Defendants "acted [maliciously] and with no regard of . . . serious injuries [sustained] on the bus," but has also alleged that the officers "*caused further harm* to the Plaintiff by not returning to Bellevue or calling E.M.S. to respond to the scene."  (Pl. 5/21/16 Ltr., at 3 (emphasis added)).

This allegation that that the delay in Plaintiff's access to medical care caused him harm starts to move the needle towards a viable claim.  At this point, however, that needle has moved not nearly far enough.  Despite the fact that, at this stage, Plaintiff's factual allegations must be taken as true and extended every reasonable inference, Plaintiff's allegations with respect to the harm caused to him by the delay in medical treatment are insufficient, as they are entirely

conclusory.  *See Iqbal*, 556 U.S. at 678.  Plaintiff has not offered any explanation as to how, or the extent to which, the alleged "further harm" occurred.  Even considering his Complaint together with his various opposition submissions, Plaintiff appears to be alleging that his neck, lower back, knee, and pelvic injuries were caused by the collision itself, not by any delay in treatment.  (*See* Compl., at 9-12; Pl. 5/21/16 Ltr., at 3; Pl. Opp., at 2.)  He has given simply no indication as to how the delay in his treatment (even assuming, despite the lack of clarity in his papers, that this delay was up to four hours) worsened his condition.  Moreover, although Plaintiff stated that he experienced rectal bleeding "do [*sic*, due] to [his] recent biopsy" while on the DOC bus (Compl., at 9), he has not alleged that the lack of immediate treatment for that bleeding demonstrated that the Correction Officer Defendants had "ignored a 'life-threatening and fast-degenerating' condition," *see DeMeo*, 2015 WL 1283660, at *11 (citation omitted).

Nor has Plaintiff alleged that the delay in his medical treatment was a "form of punishment." *Id.*  While he has alleged that the Correction Officer Defendants "maliciously" failed to provide him with "expeditious" medical treatment (Pl. 5/21/16 Ltr., at 3), Plaintiff, in explaining the facts of the incident, has variously attributed the delay in medical treatment not to an intent to punish him, but to the Correction Officer Defendants' indifference to his pain, their having been preoccupied with confronting the driver of the other vehicle in the collision, their having been unable to "respond well under 'pressure,'" and the length of time it took for correction officials to investigate the collision (*see* Compl., at 9-10; Pl. 5/21/16 Ltr., at 3; Pl. Opp., at 2).

Accordingly, without more, Plaintiff's conclusory allegation that the delay in medical treatment "caused [him] further harm," does not satisfy the objective prong of either an Eighth or 14th Amendment deliberate-indifference claim against either of the Correction Officer

Defendants.  This Court therefore recommends that any claim grounded in a delay in medical treatment be dismissed.  As it is possible, however, that Plaintiff may be able to allege additional facts demonstrating that the Correction Officer Defendants' delay in permitting Plaintiff to receive medical treatment caused or exacerbated Plaintiff's injuries, to the degree necessary to rise to the level of a constitutional violation, *see Snyder*, 2016 WL 2642226, at *3, or that the Correction Officer Defendants deliberately delayed medical care despite knowing that Plaintiff was in extreme pain, *see, e.g.*, *Quinones*, 2017 WL 775851, at *2, I recommend that Plaintiff be granted leave to replead this claim.

### C.    Municipal Liability

Plaintiff's third claim is liberally read as a *Monell* claim, by which Plaintiff seeks to hold the City responsible for his injuries.

The language of Section 1983 allows a civil claim for damages to be asserted against any "person" who, as set out above, acts under color of state law to deprive another person of any "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." *See* 42 U.S.C. § 1983.  Under *Monell*, a municipality qualifies as a "person" under Section 1983, such that it may be subject to suit.  436 U.S. at 690-91.  To state a claim under Section 1983 against a municipality, however, a plaintiff must allege that an official policy, custom, or practice of the municipality caused the deprivation of his or her federal constitutional or statutory rights. *See id.* at 694.  A municipality may not be held liable under Section 1983 solely because one of its employees violated a plaintiff's rights.  *See id.*  Instead, for Section 1983 liability to attach, a plaintiff must plead and prove a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) ("[A] plaintiff must demonstrate

that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury."  (citation omitted)).

At the pleading stage, a plaintiff "must allege facts tending to support, at least circumstantially, an inference that [the alleged] municipal policy or custom exists."  *Matthews v. City of New York*, No. 15cv2311 (ALC), 2016 WL 5793414, at *9 (S.D.N.Y. Sept. 30, 2016) (citations and internal quotation marks omitted).  Allegations regarding a single incident of unconstitutional activity will generally be insufficient, "unless proof of the incident includes proof it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  *City of Okla. v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion).

Defendants contend that Plaintiff's claim against the City must be dismissed because Plaintiff has not alleged a City policy, custom, or practice that caused a violation of his constitutional rights.  (Def. Mem., at 13.)  Defendants note that, "[c]onstrued liberally, plaintiff's Complaint can be read to allege the existence of a municipal policy giving rise to § 1983 liability under *Monell*" in connection with the City's failure to provide seatbelts or airbags on the DOC bus.  (*Id.*, at 15.)  Defendants maintain, however, that the claim should nevertheless be dismissed because courts have held that the City's failure to provide seatbelts on prison buses does not violate the Constitution, and thus cannot be the basis for a claim under *Monell*.  (*Id.*)

As noted above, the Second Circuit has indeed held that a failure to provide seatbelts does not, as a general matter, give rise to a constitutional violation.  *Jabbar*, 683 F.3d at 58 ("[T]he failure of prison officials to provide inmates with seatbelts does not, without more, violate the Eighth or Fourteenth Amendments"); *see also Carrasquillo*, 324 F. Supp. 2d at 444 ("There is . . . no *Monell* liability for the City's failure to provide seatbelts").  In arriving at this

23

ruling, the Second Circuit stated that "[a] correctional facility's use of vehicles without seatbelts to transport inmates, when based on legitimate penological concerns rather than an intent to punish, is reasonable." *Jabbar*, 683 F.3d at 58. The Second Circuit also noted that "the absence of seatbelts on inmate bus transport is itself not an excessive risk . . . to inmate safety" under the Eighth or 14th Amendments. *Id.* Given this reasoning, this Court similarly cannot conclude that the absence of airbags or, for that matter, other unspecified safety measures on DOC buses implicate the Constitution either.

It is a different question, though, whether a municipal policy or practice of transporting detainees (or inmates) in buses by placing them in small steel cages within the buses, with handcuffs shackled to waist chains, *and* without seatbelts or other protective devices, could give rise to *Monell* liability. Even assuming the City could successfully show that any of these measures individually – *i.e.*, the cage, the handcuffs, the shackles, or the lack of a seatbelt – could serve a legitimate penological interest during prisoner transport, the general risk to prisoner safety may become too great to pass constitutional muster, if such measures are routinely employed together. Accordingly, I recommend that Plaintiff's *Monell* claim be dismissed as it is currently pleaded, but that Plaintiff be granted leave to amend, in the event he is able to allege facts plausibly suggesting that it was the City's official policy, custom, or practice to combine these measures in a way that unduly compromised the safety of those being transported, and that this policy, custom, or practice had a "direct causal link" to his alleged injury. *See City of Canton*, 489 U.S. at 385.

Although not discussed by Defendants, Plaintiff also states in his Complaint that he would like to see a program put in place to "re-train" correction officers in emergency procedures because they did not "respond[] well under 'pressure'" in this instance. (Compl.,

at 5, 10.)  Liberally construed, these statements could be read to invoke a failure-to-train claim

under *Monell*.  To maintain such a claim, however, a plaintiff must plead facts capable of

supporting an inference that the "municipality's failure to train amounts to deliberate indifference

to the rights of those with whom municipal employees will come into contact."  *Chamberlain v.*

*City of White Plains*, 986 F. Supp. 2d 363, 391 (S.D.N.Y. 2013) (internal quotation marks and

citations omitted).  The plaintiff's allegations must also specifically identify training deficiencies

that are "closely related to," or that "actually caused," the plaintiff's alleged injury.  *City of*

*Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989).  Conclusory allegations that re-training is

needed are insufficient.  *See Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 539-40

(S.D.N.Y. 2012) (collecting cases and dismissing failure to train claim where plaintiff did "no

more than make conclusory assertions" that the defendant failed to train its employees properly,

without "providing any supporting factual detail about alleged deficiencies in the training

program"); *Johnson v. City of New York*, No. 06cv09426 (GBD), 2011 WL 666161, at *4

(S.D.N.Y. Feb. 15, 2011) (finding plaintiff's failure-to-train allegation insufficient where plaintiff

"[did] not ple[a]d any facts that plausibly allege a specific deficiency in the training or

supervision program that accounts for deprivation of [his] constitutional rights" (internal

quotation omitted)).  Moreover, "[a] pattern of similar constitutional violations by untrained

employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure

to train."  *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

As Plaintiff's failure-to-train allegations do not identify any specific training deficiencies

that caused his injuries and relate only to the behavior of the Correction Officer Defendants in

this one, particular incident, I recommend that the claim be dismissed.  I further recommend,

however, that Plaintiff be granted leave to amend this *Monell* claim, in the event he can add

allegations that plausibly suggest specific training deficiencies that go beyond this particular

incident, and that these deficiencies were closely related to or actually caused his injury.  *See*

*City of Canton, Ohio*, 489 U.S. at 391.

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that Defendant's motion to

dismiss (Dkt. 16) be granted in part and denied in part, as follows:

(1)    Plaintiff's Fourth Amendment claim should be dismissed with prejudice;

(2)    Defendants' motion to dismiss should be denied as to Plaintiff's claim that Officer Gonzalez was deliberately indifferent to Plaintiff's reasonable safety while Plaintiff was being transported on the DOC bus;

(3)    Plaintiff's claim that Officer Squillaro was deliberately indifferent to Plaintiff's reasonable safety should be dismissed, with leave to replead;

(4)    Plaintiff's claim that both Officers Gonzalez and Squillaro were deliberately indifferent to Plaintiff's serious medical needs, by causing a delay in his medical treatment, should be dismissed, with leave to replead; and

(5)    Plaintiff's *Monell* claim against the City should be dismissed, with leave to replead.

If this Report and Recommendation is adopted, then I further recommend that Plaintiff be

given the opportunity to file an amended complaint within 21 days of the Court's order adopting

the Report and Recommendation.  I also recommend that Plaintiff be instructed to claify, in the

amended complaint, whether, at the time of the incident, he was in custody at Rikers as a pretrial

detainee, or had been convicted of a crime and was serving a sentence of incarceration.  Finally, I

recommend that Plaintiff be cautioned that any amended complaint will completely replace, not

supplement, his original Complaint, and that it thus must contain all of the factual allegations that

Plaintiff wishes to assert.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).

Such objections, and any responses to objections, shall be filed with the Clerk of Court, with

courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe, Thurgood

Marshall United States Courthouse, 40 Foley Square, Room 2204, New York, New York 10007,

and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660,

New York, New York 10007. Any requests for an extension of time for filing objections must be

directed to Judge Gardephe. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14)

DAYS WILL RESULT IN A WAIVER OF OBEJCTIONS AND WILL PRECLUDE

APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension

Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

If Plaintiff does not have access to cases cited herein that are reported only on Westlaw or

LexisNexis, he may request copies from Defendants' counsel. *See* Local Civ. R. 7.2 ("Upon

request, counsel shall provide the *pro se* litigant with copies of [cases and other authorities that

are unpublished or reported exclusively on computerized databases that are] cited in a decision of

the Court and were not previously cited by any party").

Dated: New York, New York
       March 3, 2017

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

27

<u>Copies to</u>:

The Hon. Paul G. Gardephe, U.S.D.J.

Mr. Hiawatha Cuffee Jr.
#16R0265
Mid-State C.F.
P.O. Box 2500
Marcy, NY 13403

Defense counsel (via ECF)