UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------------
```

HIAWATHA CUFFEE JR.,

                              Plaintiff,

          -against-

MR. OFFICER GONZALEZ, *et al.*,

                              Defendants.

```
---------------------------------------------------------
```

15cv08916 (PGG) (DF)

**ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

In this Section 1983 action, which has been referred to this Court by the Honorable

Paul G. Gardephe for general pretrial supervision, the Law Department of the City of New York,

as counsel for defendant Officer Gonzalez, Officer Squillaro, and the City of New York (the

"City") (collectively, "Defendants") has filed a series of letters, by which it has repeatedly

requested that the claims of *pro se* plaintiff Hiawatha Cuffee Jr. ("Plaintiff") be dismissed

pursuant to Rules 37(b) and 41(b) of the Federal Rules of Civil Procedure for failure to comply

with this Court's discovery orders, and for failure to prosecute.[1]  This Court has repeatedly

declined to make a recommendation of dismissal, as it has generally viewed counsel's efforts as

insufficiently supported and over-reaching.  Rather, recognizing that Plaintiff – with some

notable lapses – had a long history of making what this Court perceived as good-faith efforts to

---

[1] *See* Letter to the Court from Jessica C. Engle, Esq., dated Jan. 26, 2021 ("1/26/21 Def.
Ltr.") (Dkt. 146); Letter to the Court from Jessica C. Engle, Esq., dated Mar. 2, 2021 ("3/2/21
Def. Ltr.") (Dkt. 148); Letter to the Court from Jessica C. Engle, Esq., dated Mar. 15, 2021
("3/15/21 Def. Ltr.") (Dkt. 149); Letter to the Court from Jessica C. Engle, Esq., dated Mar.
17, 2021 ("3/17/21 Def. Ltr.") (Dkt. 150); Letter to the Court from Jessica C. Engle, Esq., filed
Apr. 23, 2021 (misdated Mar. 17, 2021) ("4/23/21 Def. Ltr.") (Dkt. 151); Letter to the Court
from Emma DeCourcy, Esq., dated July 21, 2021 ("7/21/21 Def. Ltr.") (Dkt. 160); and Letter to
the Court from Qiana Smith-Williams, Esq., dated Aug. 19, 2021 ("8/19/21 Def. Ltr.")
(Dkt. 164).

prosecute his claims and that his housing situation may have recently become unstable, this Court has instead continued to make efforts to engage Plaintiff, by trying to assist him with understanding his obligations in this litigation, and by granting him extensions of time to comply with the final few discovery rulings made by this Court.

At this point, however, this Court is prepared to make a formal recommendation to Judge Gardephe that Plaintiff should face either dismissal of his claims or other sanctions.  This Court, however, wishes to be certain that Plaintiff is placed on clear notice of the *specific* consequences that he may face for failing to abide by this Court's orders and for failing to take steps necessary to prosecute this action.  Accordingly, this Court will detail, herein, the sanctions that it is prepared to recommend, and will give Plaintiff **one final chance** to avoid that recommendation.

## DISCUSSION

In the early stages of this case, when Plaintiff was in custody, he was quite active in advancing his claims.  Indeed, even after this case was closed in 2018 – when the Court found that Plaintiff's Section 1983 claims were covered by a release that Plaintiff had signed in connection with another matter – Plaintiff actively sought to have the case reopened and was successful in that effort.  Since Plaintiff's release from custody, however, his participation in the case has been less consistent.  His appearance for court conferences has been sporadic, and, while he has sometimes shown a diligent effort to comply with discovery obligations, his conduct, at other times, has evinced a seeming desire to evade his responsibilities.

Focusing on this more recent history, Defendants' repeated request for dismissal of Plaintiff's claims has centered on three issues:  First, Plaintiff's failure to attend certain case-management conferences scheduled by this Court; second, Plaintiff's failure to comply with all

portions of a discovery ruling made by this Court at a conference that Plaintiff did attend in

October 2020; and, third, Plaintiff's failure to keep the Court and Defendants apprised of an

address at which he may be reached.  This Court will address these issues here in reverse order,

as the requirement that Plaintiff keep the Court apprised of his contact information is a threshold

requirement for his prosecution of this action.

## I.      PLAINTIFF'S FAILURE TO KEEP THE COURT<br>APPRISED OF HIS CONTACT INFORMATION

A plaintiff has an obligation to prosecute his case diligently, and, if he fails to do so, the

Court may dismiss the action under Rule 41(b) of the Federal Rules of Civil Procedure, for

failure to prosecute.  *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982).

Such dismissal may be warranted where a *pro se* plaintiff "has not even fulfilled his minimal

obligation to keep the *pro se* office of this Court informed of his change of address."  *Ortiz v.*

*United States*, No. 01cv4665 (AKH), 2002 WL 1492115, at *2 (S.D.N.Y. July 11, 2002).  In this

case, Plaintiff notified Defendants' counsel on December 29, 2020 that he was no longer residing

at the address shown on the Docket of this action,[2] and, although he informed counsel of his new

address (*see* 2/8/21 OSC, at 8), he never filed any formal "Change of Address" notification with

the Court.  Furthermore, when this Court issued its Order To Show Cause in February 2021 and

attempted to mail that Order to Plaintiff at the address he had provided to Defendants' counsel in

December, the mail was returned to the Court as undeliverable.  (*See* Dkt. entry, dated Mar. 17,

2021.)  Curiously, though, in his most recent letter to this Court, dated June 30, 2021, Plaintiff

---

[2] At this Court's request, Defendants' counsel provided to this Court a copy of the email that it received from Plaintiff on December 29, 2020, and that email is quoted in its entirety in this Court's Order To Show Cause, dated February 8, 2021 ("2/8/21 OSC"), at 8.

has listed that same address (to which mail was reportedly undeliverable) as his return address. (*See* Letter to the Court from Plaintiff, dated June 30, 2021 ("6/30/21 Pl. Ltr.") (Dkt. 159).)

According to publicly available information, the address that Plaintiff provided to Defendants' counsel last December, and that he has listed most recently as his return address – 144-26 153rd Court, Jamaica, New York – is the address of a hotel (specifically, a "Days Inn") that has been used by the City as a men's homeless shelter.[3]  Indeed, when Plaintiff supplied this address to Defendants' counsel in December, he also informed counsel that he had, at that time, been "uprooted" from his prior residence (2/8/21 OSC, at 8), suggesting that he may have needed to secure new housing on an urgent basis.  The fact that mail sent by the Court to that address was returned as undeliverable in March, but that Plaintiff showed that address to be his return address in July, suggests the possibility that Plaintiff moved into, out of, and then back into the hotel during that period (or, perhaps, that he had been at this address all along, but was unable to receive mail there).  The Court, however, should not have to guess at Plaintiff's whereabouts at any given time, or engage in speculation regarding the circumstances of his housing.  It is *Plaintiff's obligation* to keep the Court apprised of an address where he may be reached, and his failure to do so puts him at risk of having his case dismissed for failure to prosecute.

Under the circumstances, Plaintiff is directed to submit a Change of Address form to the Court's *Pro Se* Office no later than November 12, 2021, listing an address at which he is able to receive mail.  Alternatively, as this Court has previously informed him, Plaintiff may elect to

---

[3] *See* http://onlineresources.wnylc.net/nychra/docs/pb__18-11-eli_calculating_budgets_for_families_with_income_in_shelter.pdf (last accessed Oct. 25, 2021). This Court notes that, although counsel for the City informed this Court that the new address that Plaintiff had provided appeared to be a hotel (*see* Transcript of Dec. 29, 2020 conference ("12/29/20 Tr.") (Dkt. 144), at 5), counsel never informed this Court that the hotel was being used by the City as a shelter.

receive Court notifications and copies of Court filings *by email*.  It appears that, throughout the last year, Plaintiff has been able to be in touch with Defendants' counsel by email, and that, if his current housing is potentially transient, it may be a viable option for him simply to provide the *Pro Se* Office with his email contact information and to register to receive Court notifications in that way.  Attached to this Order are copies of both (1) a Change of Address form, and (2) a Consent and Registration Form to Receive Documents Electronically.  <u>If Plaintiff does not submit an executed copy of at least one of these forms to the Court's *Pro Se* Office by November 12, then this Court will recommend to Judge Gardephe that his claims be dismissed without prejudice, under Rule 41(b).</u>

## II.    PLAINTIFF'S FAILURE TO COMPLY FULLY WITH THIS COURT'S OCTOBER 2020 DISCOVERY ORDER

Defendants have also sought the dismissal of Plaintiff's claims under Rule 37(b) of the Federal Rules of Civil Procedure, based on his failure to comply with discovery rulings of this Court.  Under Rule 37(b), sanctions may be imposed against a plaintiff who fails to comply with discovery orders, *see* Fed. R. Civ. P. 37(b)(2)(A), and the Rule expressly allows for the sanction of dismissal, *see id*.  "[A]ll litigants, including *pro ses*, have an obligation to comply with court orders," *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (citing *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990) (internal quotation marks omitted)), and, although sanctions against *pro se* litigants should be approached with caution, *see id.* at 301, *pro se* claims are "not immune to dismissal as a sanction for noncompliance with discovery orders," *id.* at 302.

Dismissal of a plaintiff's claims, as a discovery sanction, is generally reserved for willful violations of a court's discovery orders.  Such willfulness can, at times, be inferred from the plaintiff's persistent failure to comply with the court's directives.  *See, e.g.*, *Minotti*, 895 F.2d at

103; *see also Angermeir v. Cohen*, No. 12cv55 (KBF), 2015 WL 3766683, at *2 (S.D.N.Y. June 17, 2015) (noting that a "noncompliant party's persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith or fault" (internal quotation marks and citation omitted)); *Ruiz v. Citibank, N.A.*, Nos. 10cv5950 (KPF) (RLE), 10cv7304 (KPF) (RLE), 2014 WL 4635575, at *3 (S.D.N.Y. Aug. 19, 2014) (noting that, "[a]lthough a party's simple failure to respond to a discovery request will ordinarily not be deemed willful, prolonged failure to respond after specifically being ordered by the court to do so and warned of the consequences can render dismissal appropriate"). Still, prior to the Court's opting for the severe sanction of dismissal, the likely effectiveness of lesser sanctions should be considered, including such sanctions as directing that certain facts be taken as established in the case; prohibiting the plaintiff from supporting particular claims or opposing particular defenses, or from introducing certain evidence; striking the plaintiff's pleadings in whole or in part; or staying further proceedings until the Court's discovery orders are obeyed. *See* Fed. R. Civ. P. 37(b)(2)(A).

Here, the discovery rulings in question were made by this Court on the record of a case-management conference held with the parties on October 8, 2020 (*see generally* Transcript of Oct. 8, 2020 conference ("10/8/20 Tr.") (Dkt. 157)) and were memorialized in a written Order issued thereafter (*see* Scheduling Order, dated Nov. 5, 2020 ("11/5/20 Order") (Dkt. 140)). By the time of the October 2020 conference, paper discovery had mostly been completed; Plaintiff had been deposed; and only a handful of issues remained on both sides. This Court addressed all remaining discovery issues at the conference, and, as relevant here, directed Plaintiff to take certain steps in connection with the last of Defendants' discovery requests. To be clear, though, this Court did not find major deficiencies with Plaintiff's compliance with Defendants' requests. Rather, Defendants placed before the Court only three narrow issues, and this Court 's rulings as

to those issues were themselves fairly limited.  Moreover, as discussed below, Plaintiff has now complied with certain of this Court's rulings, leaving very little outstanding.

For these reasons, although this Court is prepared to recommend sanctions if Plaintiff continues to neglect his final discovery obligations, it finds that lesser sanctions than dismissal would be most appropriate to address any remaining discovery deficiencies.

### A.    Authorization For the Release of Medical Records by Dr. Ronald Chase

The first discovery ruling made by this Court at the October 2020 conference related to Defendants' request that Plaintiff provide an executed authorization for the release of his medical records from Dr. Ronald Chase, who was one of the physicians who, according to Plaintiff, treated him for the physical injuries claimed in this case.  Although Plaintiff had apparently provided Defendants with such an authorization, Defendants' counsel indicated that Plaintiff had filled out the form incorrectly and had not yet corrected the problem.  (*See* 10/8/20 Tr., at 7.) This Court, with counsel's input, spent time at the conference to walk through the entire form with Plaintiff, to ensure that he understood how it needed to be filled out, and then directed him to provide the properly completed form to Defendants' counsel.  (*See id.*, at 13-21.)

Although Plaintiff did not comply with this directive for quite some time, he eventually took a number of steps to do so – attempting to send Defendants' counsel the authorization by text message, email, and regular mail.[4]  (*See* 3/17/21 Def. Ltr., at 1-2; 4/23/21 Def. Ltr., at 2.)

---

[4] After Plaintiff failed to appear for certain court conferences and Defendants filed a letter seeking dismissal of his claims (*see* 1/26/21 Def. Ltr.), this Court directed Plaintiff to show cause by March 1, 2021 why it should not recommend either preclusion of certain evidence or dismissal of his claims (*see* 2/8/21 OSC).  Although it is unclear whether Plaintiff ever received the Court's Order To Show Cause, as the copy mailed to him by the Court to what it believed to be his new address was, as noted above, returned as undeliverable, the Docket reflects that he filed no response by March 1.  On March 2, Defendants' counsel promptly wrote to this Court to renew Defendants' request for dismissal (*see* 3/2/21 Def. Ltr.), sending Plaintiff a copy of that letter by email (*see id.*, at 3; *see also* 3/15/21 Def. Ltr., at 1).  Within two weeks of that date, Plaintiff evidently responded by email to Defendants' counsel, stating that he planned to provide

Although Defendants' counsel continued to maintain, for months, that Defendants had still not received a usable copy of the authorization form, counsel retracted that representation in August 2021, stating that, upon review of the case file, it appeared "that Plaintiff *did* provide a fully executed release for records from Dr. Chase" (8/19/21 Def. Ltr., at 2 (emphasis added)), and "apologiz[ing] for any confusion caused by [counsel's] mistaken representation" (*id*.).

Accordingly, this Court now considers Plaintiff to be in compliance with this aspect of its discovery Order.

### B.   Records Regarding Plaintiff's Employment

Second, as purportedly relevant to Plaintiff's damages claims, Defendants had sought releases for all of Plaintiffs' employment records since the date he sustained his claimed physical injuries.  (*See* 10/8/20 Tr., at 23.)  At the October 2020 conference, this Court largely rejected Defendants' requests in this regard as overbroad, and, after discussion on the record, directed Plaintiff to produce only:  (1) an authorization for the release of records from one prior employer (Pinnacle Electric ("Pinnacle")), and (2) with respect to his then-current employers (Lincoln Tech ("Lincoln") and Hostos Community College ("Hostos")), documents sufficient to show when he started working for each, and the amount of the wages he was paid by each.  (*See id.*, at 25-31.)

There is no longer any issue with respect to Plaintiff's provision of a release for records from Pinnacle, as Defendants' counsel represented in March of 2021 that Plaintiff had produced that release.  (*See* 3/17/21 Def. Ltr., at 2 ("Plaintiff did provide what appears to be a release for his records from his former employer, Pinnacle Electric."); *see also id.*, Ex. D.)

---

the required discovery (*see* 3/15/21 Def. Ltr., Ex. A (Dkt. 149-1)), and, that same evening, he made efforts to supply at least some of that discovery, by text, email, and mail (*see* 3/17/21 Def. Ltr., at 1-2).

Based on the last information Defendants have provided to this Court, however, it appears that – fully a year after the October 2020 conference – Plaintiff has still not produced documents sufficient to show when he started working at Lincoln and Hostos and how much he was paid by each of those employers.  This Court finds that this information is relevant to Plaintiff's damages claims because, according to Plaintiff, the physical injury caused by Defendants' claimed violation of his constitutional rights caused him to lose his prior employment (at Pinnacle) and to thereby suffer a loss of income.  (*See* 10/8/20 Tr., at 23-24.)  If Plaintiff then found other work that paid him as much, or more, than the income he lost, Defendants would not only be able to argue that his claim for lost wages should be cut off at that point, but also that his physical injury did not, itself, prevent him from engaging in gainful employment.

It is this Court's understanding that, after Plaintiff stopped working at Pinnacle, he worked for a time for an employer he has referred to as "Apex," from which Defendants were able to obtain Plaintiff's records.  (*See id.*, at 30.)  This Court also understands, from Plaintiff's statements on the record of the October 2020 conference, that he stopped working for Apex on September 17, 2020, and then started working at Lincoln.  (*See id.*, at 27.)

<u>If Plaintiff does not produce, by November 12, the required information regarding his employment at Lincoln and Hostos, then, as sanctions tailored under Rule 37(b) to ameliorate any prejudice to Defendants caused by Plaintiff's failure to produce that information, this Court will make two recommendations to Judge Gardephe.  First, this Court will recommend that Plaintiff be precluded, at trial, from claiming that he suffered any lost income past September 17, 2020 (or such other date as the records may show that Plaintiff left his job at Apex).  Second, this Court will recommend that the jury be permitted, but not required, to draw an adverse inference</u>

from Plaintiff's failure to produce information regarding his pay at Lincoln and Hostos –
including an inference that, if that information had been produced, it would have demonstrated
pay at a level at or above what Plaintiff had been earning at Pinnacle.

      **C.**      **Plaintiff's Emails With Messiah Bey**

      The third and final relevant discovery ruling made by this Court at the October 2020
conference resulted from the representation by Defendants' counsel that Plaintiff had revealed,
during his deposition, that he had "communicated at length about this case," both by text and
email, with an individual named Messiah Bey, who was not an attorney.  (*See* 10/8/20 Tr., at
31-34.)  Asserting that these communications were not protected by privilege, Defendants sought
production of all texts and emails between Plaintiff and Mr. Bey regarding the case.  (*See id.*)
Plaintiff, however, explained to this Court that Mr. Bey had only advised him informally about
the litigation process, and Plaintiff maintained that it would be an invasion of his privacy to
require him to produce these types of communications.  (*See id.*, at 32-33.)  When this Court
asked Plaintiff whether he had discussed with Mr. Bey either the underlying facts of the case or
the nature or extent of his claimed injuries, Plaintiff denied that he had done so.  (*See id.*, at
33-35.)  Under the circumstances, this Court determined that the best way to proceed would be
for it to review a sample of the communications *in camera* (*i.e.*, confidentially), so as to
determine if they bore any relevance to the claims and defenses asserted in this action and were
thus discoverable.  (*See id.*, at 35-49.)  Specifically, this Court directed Plaintiff to submit, for
*in camera* review, his email communications with Mr. Bey, which this Court reasoned would be
easier for Plaintiff to print and submit than the text messages.  (*See id.*, at 45-49.)  To date,
however, Plaintiff has not made this submission.

This Court has some doubt that Plaintiff's communications with Mr. Bey would even be discoverable, if, as Plaintiff represented at the October 2020 conference, the types of matters on which he sought Mr. Bey's guidance were generally of a procedural nature.  (*See id.*, at 32-35, 44.)  Moreover, in connection with their request to compel production, Defendants offered no evidence to suggest that the communications in question were actually relevant to particular claims or defenses asserted in the case; rather, counsel only relied, rather vaguely, on Plaintiff's purported statements that he had communicated with Mr. Bey "about this case."  (*See id.*, at 32, 34).  Nonetheless, this Court ruled that it would review a sample of the communications (specifically, the "very few" emails that Plaintiff thought existed (*see id.*, at 43-44)), and determine, from there, whether any production would need to be made.  It appears that Plaintiff – who expressed frustration with the idea of Mr. Bey's being brought into this case in any way (*see id.*, at 32, 34-35, 42-43, 45-46) – has simply refused to comply with this ruling.  Even if on a relatively minor issue, there should still be some consequence to a litigant's flat refusal to comply with a court order.

Accordingly, no later than November 12, 2021, Plaintiff is directed either:

(1)     to file, via the Court's *Pro Se* Office, a written statement confirming that he has made a good-faith search of his emails, and has located no emails, either to or from Mr. Bey, relating to this case, or

(2)     to mail to this Court, at the following address

> Hon. Debra Freeman, U.S. Magistrate Judge
> Daniel Patrick Moynihan U.S. Courthouse
> 500 Pearl Street
> New York, NY  10007

copies of his emails with Mr. Bey relating to this case, which this Court will review *in camera*, in order to determine whether any such communications should be produced to Defendants.

Plaintiff should note that he does not need to send Defendants' counsel copies of any such emails at this time.

If, by November 12, this Court has received neither a statement from Plaintiff (confirming that no emails with Mr. Bey exist), nor copies of the emails, then it will recommend to Judge Gardephe that Plaintiff pay Defendants' counsel $100, representing a portion of the legal fees that Defendants have reasonably incurred in connection with seeking this production. *See* Fed. R. Civ. P. 37(b)(2)(C) ("Instead of or in addition to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.")  While Plaintiff was originally granted leave to proceed in this case *in forma pauperis*, upon a showing that he was indigent (*see* Dkt. 5), Plaintiff was incarcerated at that time, and he has since been released from custody and has reportedly been working, earning at least some income.  This Court finds that, if Plaintiff continues to ignore this particular Order of this Court, then a $100 sanction against him would be sufficient to address the situation.  In light of Plaintiff's *pro se* status, the fact that he was entitled to seek assistance on procedural matters from a friend, and the fact that the communications sought by Defendants have not been shown to be central to any claims or defenses in this action, this Court finds that a greater award of expenses (or any other sanction) would be unjust.

## III.   **PLAINTIFF'S FAILURE TO APPEAR FOR COURT CONFERENCES**

In seeking dismissal of Plaintiff's claims, Defendants have additionally relied on the fact that Plaintiff has been absent from several conferences scheduled by this Court.  While it is true that, during the last year, Plaintiff has had a poor record of attendance, and while this has

hindered this Court's ability to supervise this case, this Court does not find that a further sanction would be warranted on this basis.

In brief, Plaintiff failed to appear for a conference in September 2020, leading this Court to reschedule that conference for October 2020, and to caution Plaintiff that his repeated failure to appear could have adverse consequences, including the dismissal of his claims for failure to prosecute. (*See* Scheduling Order, dated Sept. 23, 2020 (Dkt. 135) ¶ 3.) When Plaintiff then appeared for the October conference (at which the discovery rulings discussed above were made), he explained that the reason for his prior non-appearance was his unhappiness with what he had perceived to be this Court's bias in Defendants' favor, but that he had had a change of heart, and had decided that he should "abide by the law" and attend the October conference. (*See* 10/8/20 Tr., at 3-4.)

At the conclusion of the October conference, this Court scheduled a follow-up conference for December 8, 2020, by which it anticipated that all discovery would be complete. (*See* 10/8/20 Tr., at 62; *see also* 11/5/20 Order.) Although Plaintiff then failed to appear for the December 8 conference, that timing apparently coincided with the start of Plaintiff's housing problems, and Defendants' counsel informed this Court that Plaintiff had been in touch with her and had asked her to request an adjournment of the conference. (*See* Transcript of Dec. 8, 2020 conference (Dkt. 142), at 4.) In light of this, this Court rescheduled the conference for December 29, 2020, again issuing a written Scheduling Order (Scheduling Order, dated Dec. 9, 2020 (Dkt. 141)), in which it warned Plaintiff – as it had in September – that his failure to appear could result in sanctions, including the potential dismissal of his claims for failure to prosecute (*see id.* ¶ 2). Once again, however, Plaintiff did not appear, instead emailing Defendants'

counsel on that date; as noted above, this was the point at which Plaintiff represented that he had been "uprooted" from his residence.  (*See* 12/29/20 Tr., at 5; 2/8/21 OSC, at 8.)

Subsequently, Defendants sought dismissal of this action (1/26/21 Def. Ltr.), and this Court directed Plaintiff to show cause why it should not recommend dismissal or another sanction for his failures to produce discovery and to attend court conferences (*see* 2/8/21 OSC). After Plaintiff then made some effort to comply with this Court's outstanding discovery rulings and Defendants complained that his efforts were insufficient and against sought dismissal (4/23/21 Def. Ltr.), this Court once again scheduled a case-management conference (*see* Order, dated May 19, 2021 (Mem. Endors.) (Dkt. 154)).  Although Plaintiff did not attend that conference, which was scheduled for June 3, 2021 (*see id*.), he did write to the Court on or about June 30, 2021, stating:

> I am writing to you requesting an [] extension of time for another Conference to comply with all the discovery demands required.  I am very sorry for missing the conference authorized on June 3, 2021.  My reason for missing that phone conference is because I never received that call due to my phone being lost, and I had to wait 7 to 10 days before receiving another one.
>
> I would be very grateful for you honoring my request.

(6/30/21 Pl. Ltr.)

Given the totality of the circumstances, including Plaintiff's appearance at the October 2020 conference, the timing of his apparent subsequent loss of housing, and the content of this last communication from him (apologizing for missing the last scheduled conference, providing an explanation for his absence, and requesting that the conference be placed back on the calendar), this Court finds that Plaintiff should not be sanctioned for his failures to appear.  This Court also finds, however, that scheduling a further discovery consequence would serve little purpose at this point.  Rather, this Court will now consider discovery in this action to be *closed*,

with the exception of the two matters described above.  If, as stated above, Plaintiff does not comply with this Court's final discovery rulings by November 12, 2021, then this Court will recommend the specific sanctions described herein and will further recommend that this case proceed to any final dispositive motions or trial.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

(1)     No later than November 12, 2021, Plaintiff is directed to file, through the Court's *Pro Se* Office, a Change of Address form reflecting an address at which he is able to receive mail, and/or an executed Consent and Registration Form to Receive Documents Electronically. Blank copies of both forms are attached to this Order.  If Plaintiff files neither, then this Court will assume that he no longer wishes to pursue this action, and this Court will recommend to Judge Gardephe that this action be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure, for failure to prosecute.

(2)     Assuming Plaintiff manifests an intent to proceed with this case by timely filing the Change of Address form and/or the Consent and Registration Form to Receive Documents Electronically, then:

(a)     No later than November 12, 2021, Plaintiff shall produce to Defendants' counsel documents sufficient to show when he began working at Lincoln Tech and Hostos Community College, and the amount of his pay from each of those employers.  If Defendants report that Plaintiff has not produced that information by November 12, then this Court will recommend to Judge Gardephe that Plaintiff be sanctioned (i) by being precluded from seeking damages after the date he stopped working for Apex, and (ii) by

the Court's allowance of an adverse inference to be drawn from Plaintiff's failure to produce this information; and

(b)     No later than November 12, 2021, Plaintiff shall submit to this Court either (i) a statement that he has made a good-faith search of his emails, and has located no emails, either to or from Mr. Bey, relating to this case, or (ii) copies of his emails with Mr. Bey regarding this case, which may be mailed directly to the Chambers of the undersigned, for this Court's *in camera* (confidential) review.  If Plaintiff does not provide either by November 12, then this Court will recommend that he be sanctioned by being required to pay Defendants' counsel the amount of $100, representing a portion of the attorneys' fees reasonably incurred by Defendants in pursuing this discovery.

Apart from what is set forth herein, discovery in this action shall be considered closed, and Plaintiff is cautioned that this Court does not expect to grant any extensions of the November 12 deadline for Plaintiff to take action to avoid this Court's recommendation of sanctions.

The Clerk of Court is directed to mail a copy of this Order, together with the attached forms, to Plaintiff, at both of the two addresses shown below.  In addition, Defendants' counsel is directed to serve Plaintiff with a copy of this Order and its attachments forthwith, by email, and to file proof of such service on the Docket of this action.

Dated:  New York, New York
         October 27, 2021

SO ORDERED

DEBRA FREEMAN
United States Magistrate Judge

16

Copies to:

Mr. Hiawatha Cuffee Jr.
676 East 141 St.
Apt 6D
Bronx, NY 10454

Mr. Hiawatha Cuffee Jr.
144-26 153rd Court, Room 119A
Jamaica, NY  11434

Defense counsel (via ECF)

IH-34                                                                                    Rev:2014-1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (_____)(_____)

NOTICE OF CHANGE OF ADDRESS

I hereby notify the Court that my address has changed  to the following:

_____
Name (Last, First, MI)

_____
Address                City                          State          Zip Code

_____          _____
Telephone Number                          E-mail Address (if available)

_____          _____
Date                                      Signature



**United States District Court**
**Southern District of New York**
*Pro Se Office*

# Pro Se (Nonprisoner) Consent & Registration Form to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail. Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[2]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.



**United States District Court**
**Southern District of New York**
*Pro Se Office*

## CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

_____

_____
Name (Last, First, MI)

_____
Address              City                    State                   Zip Code

_____
Telephone Number                         E-mail Address

_____
Date                                     Signature

**Return completed form to:**

Pro Se Office (Room 200)
500 Pearl Street
New York, NY 10007